JULIO CIRILO OCASIO, Plaintiff and Appellee, *v.* SAN JUAN DOCK CO., INC., Defendant and Appellant. ROYAL INDEMNITY CO., Third Defendant and Appellee.

No. 10978. Argued February 1, 1954.—Decided February 12, 1954.

---

874

*Frank Antonsanti* and *Francisco González, Jr.,* for appellant. *Luis Blanco Lugo* and *José A. Suro* for third-party defendant and appellee. *Charles H. Juliá* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

Julio Cirilo Ocasio filed an action for damages in the former District Court of Humacao against the corporation San Juan Dock Co., Inc., alleging that on March 4, 1948, in Vieques, Puerto Rico, an employee of the defendant, while operating a bulldozer, negligently raised and let fall the ram of that mechanical device which landed on the neck of Julio Antonio Cirilo, plaintiff's son, who was repairing a part of that machine, as a result of which he died instantly. Thereupon the San Juan Dock Co., defendant herein, filed a "Third Party Complaint," alleging that on March 4, 1948 the San Juan Dock had a stevedoring contract for the loading and unloading of all United States Army transports; that at that time an insurance contract between the San Juan Dock and the Royal Indemnity Co. (to which we shall refer as the Royal), third-party defendant, was in full force and effect, covering public liability risks up to the sum of $5,000 for each person and $10,000 for each accident, and covering the legal liability of the San Juan Dock in the loading and unloading operations under the contract, and that under the terms and conditions of the insurance contract, the third-party defendant, namely, the Royal, was liable for the claims which are the subject of the complaint in the case at bar. The San Juan Dock prayed for judgment against the Royal "for all the amounts up to the sum of $5,000 which plaintiff may recover from the defendant third-party plaintiff."

Thereupon the Royal filed a motion for summary judgment, including therewith an affidavit of Luis Colberg, Assistant Secretary-Treasurer of the General Agent of the Royal in Puerto Rico, stating that on the date of the accident the policy in force did not cover operations in the island of Vieques, but only loading and unloading operations carried on at pier No. 7, San Juan, Stop 2½, Pershing Avenue,

Puerta de Tierra, and that it was not until March 12, 1948 that the policy was extended to cover operations in the island of Vieques. A certified copy of the policy was also attached to the affidavit. The endorsement or extension of March 12 was subsequently attached to the policy.

San Juan Dock filed a motion opposing the motion for summary judgment, alleging that from the face of the policy "the right or cause of action of the San Juan Dock against the said insurance company clearly appears, as well as that the policy has no geographical limits." The San Juan Dock filed a counter-affidavit which reads as follows:

"I, Pedro Feliciano, Jr., of legal age, married, industrial manager and resident of San Juan, Puerto Rico, under oath declare:

"That in the year 1948 I was directly in charge of the loading and unloading operations of the United States Army transports under a contract made between the San Juan Dock Company and the United States Government. Consequently, I am acquainted with the facts relating to the accident involved in the above-entitled cause and the insurance policy issued to the San Juan Dock Co., covering public liability risks in those operations.

"That in order to cover the public liability risks in its stevedoring operations under that contract, the San Juan Dock Co., applied for, and was issued by the Royal Indemnity Co., the policy of insurance which is attached to the motion for summary judgment filed in the above-entitled cause. *According to the said policy,* the risk known as 'stevedoring' is covered and the premiums paid to the insured are based on the amount of the payrolls for the stevedoring operations, no mention being made of geographical limits. The payrolls on which the insurance premiums are computed are not limited to wages paid in any specified place, but rather to the payroll covering the stevedoring risk wherever that operation is performed. As a question of fact, the insured paid during the policy period 1948 premiums on all its stevedoring operations under the contract in question, including operations in Vieques, Ensenada Honda, Cataño Army Terminal, and San Juan, Puerto Rico, and other places and ports where such stevedoring services are required by the Army under the contract in question. Upon ap-

plication for the said policy, the company explained to the insurance agents the contract between the insured and the United States Government indicating that, although a substantial part of those operations would be carried on in San Juan and in the Army Terminal, there would be times when the Army would require that the work be performed at some other port in Puerto Rico.

"A few days after the accident which is the subject of the complaint, and in accordance with the terms of the policy, notice of the accident was given to the insurance company, which then alleged that the accident was not covered. In view of this action of the insurance company, and in order to avoid future controversies, the San Juan Dock Co., the insured, applied for an endorsement specifically covering Vieques.

"San Juan, Puerto Rico. February 12, 1953.

"(Sgd.) Pedro Feliciano, Jr."

On March 5, 1953, the Humacao Part of the Superior Court entered an order dismissing the motion for summary judgment, on the ground that there were in its opinion "controversial issues which should be decided in a plenary suit." Subsequently, upon motion of the Royal, the Court of Humacao reconsidered its order and rendered summary judgment dismissing the "third-party complaint" and exonerating the Royal from liability, on the ground that, under the policy, Vieques was not one of the places specified therein. That ruling was supported, in the opinion of the court, by the fact that it was necessary to make an extension or endorsement on March 12, 1948, following the accident, to cover Vieques and other places, and that therefore there was no issue in controversy.

The San Juan Dock appealed from the summary judgment to this Court assigning the following errors:

"1. The Superior Court of Puerto Rico, Humacao Part, erred in deciding that the insurance contract (policy) between the San Juan Dock Co., and the Royal Indemnity Co., *specified as place of operations, Stop 2½, Pershing Avenue, San Juan, P. R., pier No. 7.* (Appellant's italics.)

"2. The Superior Court of Puerto Rico, Humacao Part, erred in taking into consideration in the decision of this case the endorsement of March 12, 1948.

"3. The Superior Court of Puerto Rico, Humacao Part, erred in deciding that the accident which occurred on March 4, 1948 was not covered by the policy of the Royal Indemnity Co.

"4. The Superior Court of Puerto Rico, Humacao Part, erred in granting the motion for summary judgment, there existing a genuine controversy between the facts alleged in the affidavit of merits attached to the motion and the one attached to the motion of opposition."

■ The errors assigned raise the question as to whether the insurance policy covered accidents in Vieques, and whether there is a factual controversy on that point. The policy drawn up and issued in the English language in its pertinent part designates the premises or properties covered thereunder, that is, the premises where the accidents covered by the policy might occur, as folllows:

"Location of Premises: Stop 2½, Pershing Avenue, San Juan, Puerto Rico."

Appellant alleges, however, that the back of the policy contains provisions which extend the premises to be covered so as to include the island of Vieques. It is stated on the back of the policy as follows:

"Definitions: (a) Premises. The unqualified word 'premises' wherever used in this policy shall mean (1) the premises designated in the declaration and other premises used in connection with the business operations insured by the policy, including buildings and structures thereon and the ways immediately adjoining and (2) when a territory is designated in the declaration in addition to a specific location, places within said territory while used by or on behalf of the insured, except public ways used in common with others."

It is also provided as follows:

"Definitions of Hazards. Division 1. Premises.—Operations. The ownership, maintenance or use of premises, and all operations necessary or incidental thereto."

In an insurance policy such as the one involved in the instant case, the location or description of the premises, where an accident might occur, is an essential element of the insurance contract and a primary factor in fixing the amounts of premiums to be paid, and, therefore, it should be deemed that the policy covers only the premises designated or specified in the policy, and only the accidents occurring in that place or in those premises. 29 Am. Jur. 524–526, § § 668, 669 and cases therein cited; *Barrett* v. *Freed*, 35 A. 2d 180, in which that rule is designated as "universal rule"; *cf.* Couch, *Cyclopedia of Insurance Law*, § 767; Richards on *Insurance*, § 521, and, by analogy, annotations in 15 A.L.R. 2d 1028.

■ In the case at bar, the location of the premises was specified as Stop 2½, Pershing Avenue, San Juan, Puerto Rico. It is true that reference was made on the back of the policy to other premises used in connection with the operation of the insured business, but it is stated immediately: "including buildings and structures thereon and the ways immediately adjoining." The inference is that it was the intention of the parties, when referring to premises, that those premises be reasonably connected, physically or geographically, with the specific premises designated in the policy, that is, that they be reasonably adjoining those premises. (By analogy, see Couch, *op. cit.*, § 767, in which cases are cited dealing with burglary insurance, which limits the scope of the word "premises." The same restrictive rule prevails in New York as respects the expression "on the described premises," employed in the Fire Insurance Law. Richards, *op. cit.*, § 521.) The reality of that intention was corroborated by the fact that on March 12, 1948, after the occurrence of the accident herein involved, the parties approved an *extension* of the policy (in accordance with the very terms of the extension), to cover accidents in Vieques, in other specified premises, and "in any place in the Island of Puerto Rico." It was indicated that such extension was in consideration of an additional premium of $610. We have already

seen that the premium is, in part, a function of the premises covered, and the amount thereof is fixed in consideration, in part, of the location of those premises. The extension of the premises covered and the increase in premium at the same time implies that the previous lower premium was a function of the limited premises mentioned in the policy.

■■ We are aware that we are dealing with a summary judgment, and that we should consider the applicability of the general rule that a summary judgment does not lie when there is an actual factual issue. However, the question raised herein refers to the interpretation of some clauses of an insurance contract or policy. As stated in Moore's Federal Practice, Vol. 6, p. 2221, § 56.17 (31), notes 13 and 17, second edition, under the subtitle "Insurance," where liability under a policy depends upon the construction of a clause, it presents a legal question which does not defeat a summary judgment. See also, in the same connection, the cases of *Bull* v. *Sun Life Ass. Co.*, 141 F. 2d 456; and *Hooker* v. *New York Life Ins. Co.*, 66 Fed. Supp. 313, 9 Fed. Rules Serv. 56 C. 54, Case 2; *Fink* v. *Northwestern Mutual Life Ins.* Co., 29 F. Supp. 972, 2 Fed. Rules Serv. 56 C. 41, Case 4; *Whiteman* v. *Federal Life Ins. Co.*, 1 Fed. Rules Serv., 56 C. 41, case 8. By way of exception to this rule, another rule prevails which is applicable to motions for summary judgments in actions involving all types of contracts, to the effect that where a certain clause of a contract is ambiguous, rendering admissible extrinsic or parole evidence tending to prove the parties' intention, if such evidence leads to a genuine factual issue, summary judgment is inappropriate, although summary judgment should be rendered where the clauses in dispute are unambiguous. 6 Moore's *op. cit.* § 56.17 (11) and 56.17 (43), pp. 2187, 2235.

The clauses transcribed from the policy in question are not ambiguous, and the intention of the parties as to the location of the premises covered under the policy is clear, considering specifically the subsequent endorsement or ex-

tension of the policy already mentioned. As to the affidavit of Pedro Feliciano, Jr., which was submitted by the San Juan Dock in opposition to the motion for summary judgment, it is stated therein, in synthesis, as follows:

(1) ". . . *According to the said policy*, the risk known as 'stevedoring' is covered and the premiums paid to the insured are based on the amount of the payrolls for the 'stevedoring' operations, no mention being made of geographical limits. The payrolls on which the insurance premiums are computed are not limited to wages paid in any specified place, but rather to the payroll covering the 'stevedoring' risk wherever that operation is performed. As a question of fact, the insured paid during the 'policy period' 1948 premiums on all its stevedoring operations under the contract in question, including operations in Vieques, etc."

The policy does not disclose that the premiums were paid on the basis of the amount shown on the payrolls, without geographical limits. On the contrary, the policy establishes geographical limits and the extension or endorsement stipulates an increase in the premiums in consideration of the extension of the location of the premises. The portion transcribed from the affidavit of Pedro Feliciano, Jr., presents not only a personal interpretation of the policy, but also a recital of facts incompatible with or repugnant to the clauses of the policy and its extension or endorsement. Therefore, under the parol-evidence rule it would be inadmissible.

(2) It is also stated in the affidavit in question that "Upon application for the said policy, the company explained to the insurance agents the contract between the insured and the United States Government indicating that, although a substantial part of those operations would be carried on in San Juan and in the Army Terminal, there would be times when the Army would require that the work be performed at some other port in Puerto Rico." However, the fact that such explanation was given to the Royal does not imply that it assented to such extension of the geographical limits, or that

such extension was a part of the terms and conditions of the policy. The policy does specify the premises covered. That clause was not changed as a result of such alleged explanations. On the contrary, it was deemed necessary to change that clause and to enlarge the premises covered after the occurrence of the accident, in consideration of the payment of a greater premium. The definition clauses printed on the back of the policy are usual in this type of policy, and it does not follow that their wording was due to or has been affected by the alleged explanations in the affidavit.

 Turning to another aspect of this case, § 175 of our Insurance Act, as amended by Act No. 19, approved April 15, 1929 (Sess. Laws, p. 160), provides that in the case where the insurance policy was issued in favor of a third person, the action to claim such indemnity as may be proper may be presented jointly against the insured person and the insurance company. The complaint in this case was not filed jointly against the insured and the insurance company, but the insured acted within the law, pursuant to Rule 14 of the Rules of Civil Procedure, which authorizes a defendant in cases such as the one at bar to include in the action a third party defendant. *Cf. García* v. *Government of the Capital*, 70 P.R.R. 312; *García* v. *Government of the Capital*, 72 P.R.R. 133. Although the liability of the insurance company is, as a general rule, subordinate, the company was entitled to prove, prior thereto and before establishing the insured's liability, that it was not liable under the terms of the policy itself.

In view of the foregoing, the lower court acted correctly in rendering summary judgment. The judgment appealed from is affirmed.